Good morning, Your Honors. May it please the Court, Sylvia Spars on behalf of the Petitioner and Ms. Ticas. Can I ask a question here before, of both counsel, before we proceed too far? As I understand, we have a motion before us to remand to the Board. Yes. And you have filed an opposition, but the opposition is with respect to the terms, as I understand it. Is that correct? Correct, Judge. I just don't want it to be such an open remand, where the Board would just rewrite a decision and kind of say the same thing. Okay. So if you both agree that we have to remand, then or not that we have to, but you have asked that we remand. Yes, Your Honor, we have asked that. So perhaps we could focus the argument on what terms the remand should be conditioned on. Is that — does that make any sense? It makes sense to me. Sure. Okay. So why don't you address how you want the remand to read. Okay. Well, basically, there's two — Could you move the mic down and speak a little closer? Yes. Thank you. Yes. Well, there's basically just two main issues in this case, right? So is the particular social group that was identified by Ms. Ticas a cognizable social group? And it should be that it is, because Medova-Costa has identified sex as being an innate characteristic, and also this Court in Perdomo v. Holder has recognized that all women in Guatemala could be a cognizable social group. So starting off with the social group, they should recognize that this has already been held by both the Board and this Court, that it's a cognizable social group. And you want us to say — just say that outright as opposed to just saying the particularity analysis was incorrect? Because I thought there were — there was another component that neither the IJ nor the BIA addressed that I don't know that we can just tell them, and on — isn't the social distinction a problem? Well, the IJ did address — only addressed the particularity issue, and then the BIA, de novo, addressed both issues. So they went ahead and said there was no — actually, they skipped over the particular social group and said there was no nexus. Well, yeah, it's debatable. But, yeah, I agree with you. But, no, I guess I'm just still talking about within the particular social group analysis. Particularity is one component of it. Correct. Isn't there another component that's totally unaddressed? Yes. There's three. There's the immutability and then the social — Which is not an issue. Right. And the social distinction. Okay. That's what I'm talking about. We don't have a ruling from the agency on that. And so wouldn't we — wouldn't the remand have to encompass — wouldn't the remand have to give the agency the ability to say we're going to look at that in the first instance as opposed to our court? Yes. I agree that the agency should look at that. However, again, with specific instructions on what the agency has already said in previous decisions. So in matter of WGR, they already came up with their elements, and they said what is particularity. This Court has also addressed what is particularity. And you have to look at the country condition report, what's happening in that country. But I'm not talking about particularity, right? Social distinction. Yeah. No, no. Right. What I heard you say — I just want the Court to, when they remand, to even address the social distinction issue, to be clear on what is social distinction and not to deviate, right? So they should be using their own law, which is looking at their country condition report, looking to see if there's specialized law that is addressing women and also victims of violence, and so to bolster the argument that social distinction exists. I think it's clear on this record that there is social distinction. I understand that this Court wants the BIA to get a first crack at it. I agree. However, with the — with those specific instructions and those rules in place. But you wanted to read something like to consider the issue of social distinction in light of certain cases? Correct. Yes. Okay. And so what those cases would be? So it would be a matter of WGR, matter of MEVG, and also this Court's case, Enriquez v. Rivas. Okay? Okay. But we can just tell the agency it's wrong as to particularity, right? Yes. I mean, that seems to me to be squarely before us. Yes. Okay. And then you want us to go further and say the agency was wrong on Nexus, too? Correct. Yes. And there's four reasons, very clear from the record, why there was Nexus, right? So the agency had said that she was a victim of indiscriminate crime, that these were random crimes. However, all the crimes, of course, only have to do with sexual assault, sexual assault, rape, sexual harassment. And there was never anything else like she was getting robbed, she was being extorted. It was only sexual crime. So it's very clear the type of crime that they were going after her because of her sex. So that's very clear. Also, the country condition report, again, states how women are treated and how the government is unable to protect them, and even though they have special legislation, how they can enforce. And also there is all her testimony, right? So when these horrible things were happening to her, they were indicating, you know, her uncle, this is what happens to women. When she was being, trying to be abducted, I want you for me, like I wanted you to be my wife. The classmate, the other rape by the gangs, this is what So there was at least four different reasons to say why there was this clear nexus of this is happening to her because of her sex, because she's a female. Okay. And so we correct them, correct the agency on particularity. We give some directions as to what they need to do on social distinction. We say you're wrong potentially on nexus, although the nexus seems to me that's contingent upon what the particular social group ends up consisting of, right? Correct. Your view of all women in El Salvador, rather, is correct then. And then what? Is that it? We're good? Or is there more that you think we need to say? I think that that would be sufficient. Yes. Can I ask the former Attorney General, the most recent one, issued an interpretation in which he said that when the alleged persecutor is somewhat unaffiliated with the government, the applicant must show that flight from her country is necessary because her home government is unwilling or unable to protect her. Does that clause satisfy? Yes. Yes, Judge, because I think that the country conditional report shows that the government of El Salvador is unable, right? So they're making some efforts, but those they can't carry out those efforts. They're not being successful. There's still a lot of problems with being able to enforce the legislation. There's been public judges that say that they're not going to enforce certain legislation that were made specifically for women. So this is a widespread problem that is not being addressed. So I feel that that, even though it is, these were not public officials, these were private individuals, the country is unable to control these individuals. And is that something that should be addressed or was it addressed? Refresh my recollection. It wasn't addressed, Judge. I don't think that matter of AB is really applicable in this case, but I mean, the issue of if it's a private individual, do we have to show that the government is unable or unwilling to protect? I mean, I think that that would sound fair. Well, it was a private individual, but she wasn't claiming, was she, that she was being raped by government? No. So it was private. And so then the issue is whether or not the country is willing or unable to protect her. Correct, Judge. And has anyone made any finding on that? No, I don't think that there was any findings made on that. So wouldn't that have to be addressed? Yes, that can be addressed. But also again, in light of the rules that are in place, which is you look at the country conditions and you see that the country of El Salvador is unable to protect women from violence. Okay. Okay. Unless you have anything else, why don't we hear from the government and then you  May I please the Court, Emanuel Pallaro, for the Respondent in this case. Briefly, I do want to apologize to the Court and Mrs. Sparza for filing the motion at an advanced stage. The proceedings, normally my office would have done that at the briefing stage. It didn't happen here, but we took a fresh look at it prior to argument. We appreciate your doing that. Thank you, Your Honor. I appreciate that. We don't want to discourage the Attorney General from doing that. Good to hear. Thank you, Your Honor. I would like to conclude the what the parameters of remand might look like. We don't disagree that social distinction needs to be addressed. It hasn't been. I would agree with Your Honor that I don't believe the agency discussed nexus here. The decision is not a model of clarity. What the I.J. said is this group is too big to be particular. We agree that that's does not withstand scrutiny under PERDAMA. Right. What I would request the Court to do, and of course it's your prerogative, is that because the agency apparently overlooked PERDAMA or didn't discuss PERDAMA in either decision, I don't know why it did not, but it appears to be an omission or it overlooked it. I would request respectfully that the remand be shaped such that the board's directed to reconsider its termination in light of PERDAMA and other precedents that are by it. On particularity? No. That's all I'm asking. I have to ask that, Your Honor. Okay. What else do you want to ask? You know, Your Honor, okay. I won't move on. I can take a hint. No, but my only point is I think they overlooked it, and I told you what we think about that. All right. Moving on. I don't think — I believe nexus has not been addressed because you can't address nexus in a vacuum until you decide what the particular social group is. I believe what happened here is the discussion of nexus by the IJ happened when he was discussing humanitarian asylum. That's when he discussed criminal conditions in El Salvador. In his part of the decision discussing particularity, he just stopped when he said it was too broad. End of story. So I don't believe he reached the nexus issue. As far as the board, there is a site to a case or two with a parenthetical that suggests that they looked at nexus, but you cannot look at nexus in this case unless you consider — I'm sorry. We agree that simply because a conduct is criminal, that does not exclude the possibility of a nexus termination. We need to have a mixed motive or a motive analysis. That clearly hasn't happened here, and I think it should happen. So we would request that the remand include a direction to — for the board to fully consider once they decide the cognizability of this proposed group. Can I ask you just about the statement on AR-4? I think you know probably the sentence I'm talking about. I can read it to you, or you can — I've got it in front of me. You're on, but — Yeah. Okay. So it's just in the middle of that, you know, top third of the page. The record supports the immigration judge's finding that the Respondent has not established that she is a member of a cognizable particular social group, right? So that could have just stopped right there. But then it says, or that the harm she suffered was due to her membership in a particular social group. And I don't see what — if that's not a nexus determination, what is that? There's no reason to say or and then to go on, right? I agree on the structural argument. The point is, where is that nexus discussion in the IJ's decision? It's not there. I agree. But — but the board — we're reviewing the board's decision. I don't — I mean, we're trying to figure out what do we have the authority to opine on. And I — if the board wants to spout off about another aspect of the analysis that maybe the IJ didn't expressly address, don't we then — we review the board's decision. Don't we have to tell the board, no, you were wrong to say that, because — Otherwise it's going to say it again. Right. Exactly. So don't we have to correct that if we think that's incorrect? I don't disagree with — I don't think there has been — to the extent the board affirms the IJ's nexus determination, I think that that's not an accurate assessment by the board. Is that — are we talking about the same thing here? I don't disagree with that notion. And I think — but I think on remand, the board needs to engage — again, that's not super clear to me. But in arguing against a finding here by the board on nexus is the fact that you cannot make that determination without — unless and until you have a cognizable social group, then you apply the connection between the harm and that group. Was it unaccounted for? We're not understanding why we can't tell the board to consider that. No, I'm sorry. No, okay. So we're not communicating. It's my fault. Yes, I don't disagree with that. No. I don't — I don't think this board, this court can make a nexus finding based on what's in front of it. I think the board has to do that in the first instance. Roberts, couldn't we say, and why — I'd like to hear if you think that we should say otherwise. But if the I.J. or the board on remand were to determine that all women in El Salvador constitute a cognizable particular social group, then I don't see any basis for the agency on remand to say that nexus — there's no nexus. That's what I'm trying to — can't we at least say we're not telling you you must find this to be a particular social group? But if you do, don't come back here saying there's no nexus, because you've already teed that up and we're telling you that's wrong. I understand. Can't we say that? I hope you don't, and here's why. Okay. Because that's a complicated analysis. There is evidence in the record that was presented on motives that go beyond pure criminality. But I think that's — that analysis — I don't think it's evident from this decision the board did that analysis. So that's — that's what I'm saying. I don't understand the board — I'm sorry. If the Court determines that there's nexus here based on the record, I think you're going beyond what the board actually decided. So — but if you — if it's your conclusion, Your Honor, that the board considered all the nexus evidence and whatever, I just think that that's kind of a thin statement that you quoted to me. I understand why you reached your conclusion. I'm not — I'm not saying I've reached a conclusion. I'm just looking at that, and I don't really know what to make of it, other than — Well, there you go. I don't know what to make of it either, except I don't believe they did a full-fledged nexus analysis. And if you were to make that full-fledged analysis on your own in the first instance, respectfully, I would suggest — But we can at least say that they were wrong in suggesting that there's no nexus. I'm fine with that. Okay. Again, that's all I have, unless you have any further questions. Thank you, Your Honors. Okay. Thank you. And thanks for sticking around in the smoky weather. You've been here as long as we have, I think. Yeah. Okay. Yes. I just wanted to address that last issue, because I do think that the Board of Immigration Appeals did address the nexus issue as — I'm sorry. Would you say that again more loudly? That I do believe that the board did address the nexus issue, and that this Court can also address in the nexus issue, because they did, in that paragraph that you stated, also, on the first page, it says that asylum is not available to victims of indiscriminate violence unless they are singled out for violence on account of. So they discussed the nexus, but they dismissed it quickly because they just said, oh, these are random crimes, therefore there's no nexus. So the Court, I would think, is definitely — it would be appropriate for them to address the nexus issue and to find that there was — No, I can't say that they were wrong in saying there was no nexus. Yes, Judge. I would agree. Thank you. Okay. Thank you very much, counsel.
judges: Schroeder, Watford, Korman